FILED
2011 Aug-10  PM 04:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHERRY ROSS,** | ) | |
| **PLAINTIFF,** | ) | |
| **VS.** | ) | **2:10-cv-2142-JHH** |
| **JEFFERSON COUNTY DEPARTMENT OF HEALTH.** | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

## MEMORANDUM OF DECISION AND ORDER

The court has before it the June 22, 2011 Motion (Doc. #16) of Defendant Jefferson County Department of Health ("JCDH") for Summary Judgment.  Pursuant to the court's June 23, 2011 order (Doc. #17), the Motion (Doc. #16) was deemed submitted to the court for review, without oral argument, on July 21, 2011.

Also pending before the court is the Motion (Doc. #22) to Strike filed by Plaintiff, as well as the Motions (Doc. #24, 31) to Strike and the Motion to Enforce (Doc. #30) filed by Defendant.  The motions to strike (Docs. #22, 24, 31) are considered herein.  The Motion to Enforce (Doc. #30) is **MOOT** since Defendant JCDH is entitled to summary judgment as to all claims asserted against it by Plaintiff.

1

## I.     Procedural History

Plaintiff Sherry Ross commenced this action by filing a complaint in this court on August 5, 2010, alleging that her former employer, Defendant Jefferson County Department of Health, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, by denying her reasonable accommodations for her disability and by denying her light duty employment, (*see* Compl. ¶¶ 8-11), and also violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1981a, and 42 U.S.C. § 1983 by terminating her employment on account of her race (*see* Compl. ¶¶ 14-18).  Defendant's June 22, 2011 Motion (Doc. #16) for Summary Judgment asserts that: (1) Defendant is not liable to Plaintiff under the ADA and the facts of this case because: (i) Defendant is an arm of the State of Alabama and is therefore immune from an award of money damages under the employment provisions of the ADA by virtue of *Board of Trustees v. Garrett*, 531 U.S. 356, 364 (2001) and (ii) under the undisputed facts of the case, the Plaintiff never requested reasonable accommodation and therefore never triggered the Defendant's responsibility to engage in the reasonable accommodation process; and (2) Defendant is not liable to Plaintiff under Title VII because: (i) the Plaintiff has repudiated this claim by stating that race played no role in her termination; (ii) that there was no such similarly situated person to whom Plaintiff can point to as having been treated in better terms; and (iii) there were

2

legitimate, non-discriminatory business reasons for dismissing the Plaintiff.  (Doc. #16 at 1-2).

On June 22, 2011, Defendant filed a brief (Doc. #16-1) in support of its motion and filed evidence[1] (Doc. #29) in support thereof on August 4, 2011.  Plaintiff filed a response (Doc. #21) and evidence[2] (Doc. #20) in opposition to the motion on July 14 and 15, 2011.  Defendant filed a reply brief (Doc. #25) to plaintiff's opposition on July 26, 2011.

## II.    Standards for Evaluating a Summary Judgment Motion[3]

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*

---

[1] Defendant submitted the following evidence: the affidavit of Teri Chafin, DMD, MPH (Exhibit 1), the deposition transcript of Dr. Deveta Peoples (Exhibit 2), the affidavit of Dolores Johnson (Exhibit 3), the deposition transcript of Plaintiff, Sherry Ross (Exhibit 4), the affidavit of Randy Manzella (Exhibit 5), and the Defendant's Responses to Interrogatories (Exhibit 6). The Defendant was allowed to file its evidence out of time as per this court's order (Doc. #28) of August 4, 2011.

[2] Plaintiff submitted an affidavit with attachments in opposition to defendant's motion for summary judgment.  A complete copy of the same affidavit (Doc. #27) was filed on July 29, 2011 in compliance with the court's order (Doc. #26) of July 27, 2011.

[3] Federal Rule of Civil Procedure 56 was amended on December 1, 2010.  However, even with the 2010 amendments, "the standard for granting summary judgment remains unchanged."  FED. R. CIV. P. 56 advisory committee's note (2010 Amendments).

*v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings that the moving party believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(a) requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Chapman,* 229 F.3d at 1023. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the

burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991) (*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact (i.e. facts that would entitle it to a directed verdict if not controverted at trial).  *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the nonmoving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the nonmoving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the nonmoving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the nonmoving party on the issue in question.  This method requires more than a simple statement that the nonmoving

party cannot meet its burden at trial but does not require evidence negating the nonmovant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the nonmoving party's case. *Fitzpatrick*, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the nonmoving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the nonmoving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the nonmovant can no longer rest on mere allegations, but must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## III.   Relevant Undisputed Facts[4]

### A.   Explanation of Dental Service Offered by JCDH

One of the services offered by the Jefferson County Department of Health ("JCDH") is dental health services for indigent children and adults. (Chafin Aff. ¶¶ 3-4). Dental services are delivered in health centers located throughout Jefferson County, as well as through mobile dental clinics which visit schools throughout the

---

[4] If the facts are in dispute, they are stated in the manner most favorable to the nonmoving party. *See Fitzpatrick*, 2 F.3d at 1115.

county.  (Chafin Aff. ¶ 3).  Each dental clinic is typically staffed on any given day by one dentist, one hygienist, and two dental assistants.  (Chafin Aff. ¶ 5).  This is known as "four handed dentistry." (Chafin Aff. ¶ 4; Peoples Dep. at 10).  One dental assistant is typically assigned "chair-side" to assist the dentist in dental procedures while the other is assigned to front desk duties.  (Chafin Aff. ¶¶ 4, 5; Peoples Dep. at 10).  Both chair-side and front desk duties are essential functions of the position of dental assistant at JCDH, and both are equally strenuous.  (Chafin Aff. ¶¶ 6-7).  Even when assigned to front desk duties, a dental assistant must be able to assist chair-side if needed.  (Chafin Aff. ¶ 8).  The dental hygienist does not assist the dentist with patients scheduled for dental procedures as the hygienist has a separate schedule of patients who are being seen for routine cleanings.  (Chafin Aff. ¶ 8).

## B.    Plaintiff Sherry Ross's Employment with the JCDH

Plaintiff Sherry Ross was hired by JCDH as a dental assistant and began work on or about November 13, 2001.  (Johnson Aff. ¶ 4).  During her tenure with the Department of Health, Ross worked exclusively as a dental assistant.  (Johnson Aff. ¶ 5; Chafin Aff. ¶ 9).  For much of her time at the JCDH, Ross was assigned to work in the mobile dental clinic program.  (Pl. Dep. at 29; Chafin Aff. ¶ 8).  On or about August 18, 2007, Ross was assigned primarily to work in the dental clinic in the Bessemer Health Center, and remained there until the termination of her employment.

(Chafin Aff. ¶ 11).  The Director of Dental Services at all relevant times to this case
was Dr. Teri Chafin.  (Chafin Aff. ¶ 2).

### C. JCDH's Policy on Family and Medical Leave and Ross's Utilization of Leave Time

In May 2007, JCDH revised its Family and Medical Leave procedures
contained in the Employee Time and Attendance Policy.  (Johnson Aff. ¶ 6).  Those
policies were revised to convert the health department to the "rolling" 12 month
period for use of the 480 hour allotment as allowed under the Family and Medical
Leave Act.  (Johnson Aff. ¶ 7).  The new policy also provided that if Family and
Medical Leave were approved, all accrued leave must be used before entering into
non-paid status.  (Johnson Aff. ¶ 9).  That is, the JCDH exercised its right under the
Rules and Regulations of the Personnel Board to run Family Medical Leave
concurrently with other paid and unpaid leave.  (Johnson Aff. ¶ 8).  The JCDH Time
and Attendance Policy recognizes and follows the regulation of the Personnel Board
of Jefferson County that employees who are in an unpaid leave status for more than
15 days per month do not accrue forms of paid leave, such as vacation or sick leave,
that would otherwise accrue.  (Johnson Aff. ¶ 27).

Plaintiff Ross attended training on JCDH's new Family Medical Leave
procedures on June 26, 2007.  (Johnson Aff. ¶ 10).  Almost immediately thereafter,

Ross began to exercise her rights under the Act.  In early July 2007, Ross submitted a request, which was granted, for intermittent leave used during the period of June 14, 2007 to June 30, 2007.  (Johnson Aff. ¶ 11).  The paperwork submitted by Ross and her physician, Dr. Wallace Purdy, indicated that the leave was requested to accommodate Ross's serious medical condition of fibromyalgia.[5]  (Johnson Aff. ¶ 12).  As a result of the approved leave request for the period of June 14, 2007 to June 30, 2007, 26.5 hours of leave were counted against Ross's allotment of 480 hours in the rolling 12 month period.  (Johnson Aff. ¶ 14).

In 2008, Ross submitted a request for intermittent leave to be used during the period of March 1, 2008 through March 1, 2009.  (Johnson Aff. ¶ 16).  The submitted paperwork in support thereof again indicated that the leave was requested to accommodate Ross's serious medical condition of fibromyalgia.  (Johnson Aff. ¶ 17).  The JCDH approved that request for intermittent leave and a letter was sent to Ross by Randy Manzella, Deputy Director of Finance and Administration, attesting to the same.  (Johnson Aff. ¶ 18; Manzella Aff. ¶¶ 2, 7).

Ross later submitted paperwork to request non-intermittent leave for the period of December 29, 2008 through February 16, 2009.  (Johnson Aff. ¶ 21).  The

---

[5] At JCDH the serious medical condition or other reason for leave is not communicated to the service center such as dental services by Human Resources, but only the requested dates for leave approval by the service center director.  (Johnson Aff. ¶ 13; Chafin Aff. ¶ 13).

paperwork indicated that Ross needed the leave to accommodate a serious medical condition requiring major gynecological surgery, as attested to by Dr. Yahi Sabri. (Johnson Aff. ¶ 22). JCDH approved Ross's leave request and a letter was sent to Ross by Randy Manzella informing Ross of the approval. (Johnson Aff. ¶¶ 23, 24; Manzella Aff. ¶ 10). At the time Ross's non-intermittent leave began on December 29, 2008, the JCDH records indicated that Ross had already used 234.5 hours of her Family and Medical Leave allotment for the rolling 12 month period from December 29, 2007 to December 29, 2008, leaving her with 245.5 hours of leave remaining for the non-intermittent leave from December 29, 2008 to February 16, 2009.[6] (Johnson Aff. ¶ 25). Although Ross was projected to exhaust her leave allotment prior to February 16, 2009, JCDH granted her entire leave request. (Johnson Aff. ¶ 26, Pl. Aff. ¶ 33).[7]

JCDH records indicate that prior to the completion of her non-intermittent leave on February 16, 2009, Ross called Teresa Alexander, the principal dental

[6] Plaintiff does not dispute this point. (*See* Doc. #21 at 1).

[7] Plaintiff disputes that she was told that her leave allotment would expire prior to February 16, 2009, but she does not dispute the fact that the leave allotment did indeed expire prior to that date. (*See* Pl. Aff. ¶¶ 33-39). Paragraphs 24 through 30 and 34 through 41 are part of the subject of defendant's Motion to Strike due to the fact that they were omitted in the original submission by Plaintiff. (*See* Doc. #24 at 1-2). The court, by order (Doc. #26) dated July 27, 2011, allowed Plaintiff until August 1, 2011 to file a complete copy of her affidavit into the record. Plaintiff timely did so, (*see* Doc. #27), and therefore defendant's argument that portions of Plaintiff's affidavit are incomplete (*see* Doc. #24 at 1-2) is **MOOT**.

10

hygienist at the time, to discuss returning to work when the leave expired.[8]  (Chafin Aff. ¶¶ 20, 43; Pl. Dep. at 62-63).  Due to a clerical error, Alexander thought that Ross's original return date was February 19, 2009; Alexander informed Ross and Dr. Chafin of that date.  (Chafin Aff. ¶ 16).  Ross believed that her return to work date had been extended to February 19, 2009 and stated that she would return to work on that date.  (Pl. Aff. ¶¶ 34-37;[9] Chafin Aff. ¶ 16).  Although Chafin caught the error prior to Ross's return, she did not feel that she could insist on Ross returning prior to February 19, 2009 at that point.  (Chafin Aff. ¶ 17).

On the morning of February 17, 2009, JCDH received a return to work slip from Ross's physician, Dr. Sabri, via facsimile and dated February 16, 2009, indicating that Ross would return to work on February 19, 2009, and recommending light duty.  (Manzella Aff. ¶ 12; Exh. C to Manzella Aff.).  Manzella contacted Ross and explained that JCDH does not provide light duty work per se.  (Manzella Aff. ¶ 13; Pl. Dep. at 115-16, 171-73).  Manzella suggested that Ross apply for an extended

---

[8] JCDH Dental administration informed employees of its procedures relating to calling in if the employee could not come to work as scheduled.  (Chafin Aff. ¶ 19; Pl. Dep. at 61-63).  With regard to unplanned absences, when a dental employee could not come in as scheduled, the procedure was for the employee to call the principal dental hygienist (and later Assistant Health Services Administrator) for Dental, who in this time period was Teresa Alexander, by 6:30 a.m. or as soon as possible, and also to call the dentist over the clinic in question.  (Chafin Aff. ¶ 20; Pl. Dep. ¶ 62-63).

[9] *See* footnote 7, *supra*.

11

medical leave of absence because he knew Ross had used up her leave hours and had no paid leave available; however, Ross insisted that she could perform her full duties. (Manzella Aff. ¶ 13; Exh. C to Manzella Aff.).  JCDH then received a second return to work slip from Dr. Sabri.  That slip was dated February 17, 2009 and indicated that Ross could return to work on February 19, 2009 without restrictions.  (Manzella Aff. ¶ 14; Exh. D to Manzella Aff.).  On February 18, 2009 Manzella contacted Ross by telephone and informed her that he had received the second return to work slip.  Ross told Manzella that she would be at work on February 19, 2009.[10]  (Manzella Aff. ¶ 15).

On Thursday, February 19, 2009, Plaintiff telephoned the dental administration, Teresa Alexander, and said that she could not come to work as agreed.[11]  (Chafin Aff. ¶ 18; Pl. Dep. at 125).  In response, Ross was told that she needed to talk to Dolores

---

[10] JCDH contends that in the phone conversation of February 18, 2009, Manzella informed Ross that she had exhausted all of her FML time and all paid leave time and that she was expected to be at work on February 19, 2009.  (Manzella Aff. ¶ 16).  Ross disputes this point (*see* Pl. Aff. ¶ 39) and therefore, for purposes of the pending motion for summary judgment, the court assumes that Manzella did not tell Ross that she had exhausted all FML and paid leave time.

[11] Although Plaintiff contends in her brief that she informed Alexander on February 19 that she could not return to work as agreed because of a flare up of fibromyalgia, the cited portion of Plaintiff's affidavit does not support that contention.  (*See* Doc. #21 at 2, ¶ 62 citing Pl. Aff. ¶ 11).

Johnson or Randy Manzella about obtaining additional leave,[12] and that Ross was not on the schedule to work the week of February 24 through the 27th.  (Ross Dep. at 119-20, 134; Chafin Aff. ¶ 23).

Plaintiff did in fact call Dolores Johnson on February 19 and left two voice mail messages; however, those phone calls were not returned.  (Pl. Dep. at 129-30, 171-73; Johnson Aff. ¶ 32).  Ross did not show up for work on Friday, February 20, 2009.  (Chafin Aff. ¶ 24).  She did not call Teresa Alexander or the supervising dentist on February 20, as JCDH contends would have been proper dental procedure.  (Chafin Aff. ¶ 24).  Ross did not believe that calling either of those individuals was necessary since she had been previously informed to call Johnson or Manzella.[13]  (Pl.

---

[12] It is JCDH procedure that service centers, such as Dental, cannot approve leave without pay, and that any request for leave without pay must be approved by the Director of Human Resources or by the Health Officer or his designee.  (Johnson Aff. ¶ 37).  Randy Manzella, as the Deputy Administrator of Finance and Administrator at JCDH, is the Health Officer's designee for matters under the Time and Attendance Policy.  (Manzella Aff. ¶¶ 3, 4).  Plaintiff did not apply for extended unpaid medical leave because neither Johnson nor Manzella informed her that it was necessary.  (Johnson Aff. ¶ 38; Manzella Aff. ¶ 18; Pl. Aff. ¶ 39).

Paragraph 38 of Johnson's affidavit is one of the subjects of Plaintiff's Motion (Doc. #22) to Strike.  However, it is cited here only for the contention that Ross did not apply for extended medical leave.  Of this fact Johnson had personal knowledge.  As to this point, the Motion (Doc. #22) to Strike is **DENIED**.  *See also* footnote 19, *infra*, mooting certain portions of Plaintiff's Motion (Doc. #22) to Strike.

Paragraph 18 of Manzella's affidavit is another one of the subjects of Plaintiff's Motion (Doc. #22) to Strike.  However, it is cited here only for the contention that Ross did not apply for extended medical leave.  Of this fact Manzella had personal knowledge.  As to this point, the Motion (Doc. #22) to Strike is **DENIED**.  *See also* footnote 19, *infra*, mooting certain portions of Plaintiff's Motion (Doc. #22) to Strike.

[13] Although Plaintiff's brief in opposition to the motion for summary judgment asserts that "[o]n Friday, February 20, 2009, plaintiff called Teresa Alexander to up-date Alexander

Aff. ¶ 11).

When Alexander did not hear from Ross on the morning of February 20, 2009, she called the Bessemer Clinic to determine if Ross had shown up for work and learned she had not.  (Chafin Aff. ¶ 24).  Johnson retrieved Ross's voice mail message on February 20, and returned the call.  (Johnson Aff. ¶¶ 32-33; Pl. Dep. at 129-30).  Ross told Johnson that she could not return to work yet because of a flare-up of her fibromyalgia resulting in a temporary inability to walk, and did not know if she would be able to return to work on Monday, February 23.  (Johnson Aff. ¶ 33; Pl. Aff. ¶ 6; Pl. Dep. at 130-31).  Plaintiff did not request any accommodation during that phone call.  (Johnson Aff. ¶ 34).  Johnson told Ross that she needed to call and speak with Randy Manzella.  (Johnson Aff. ¶ 33; Ross Dep. at 131).  After speaking with Johnson on February 20, Ross left a voice message for Randy Manzella indicating that she had experienced a flare-up of her fibromyalgia and could not walk; Manzella never called Ross back.[14]  (Pl. Dep. at 131-32; Pl. Aff. ¶ 39).[15]

---

about her medical condition," the deposition page cited to in support of that contention does not say that.  Instead, page 173 of Plaintiff's deposition discusses phone calls made on Monday, February 23.  Therefore, Plaintiff's affidavit is taken as true for February 20 – that Ross did not call Alexander on that date because Ross had been informed that she should talk to Johnson or Manzella.

[14] Because this fact is disputed, it is stated above in the manner most favorable to Plaintiff.  (*See* Manzella Aff. ¶ 18; *see also* footnote 12, *supra*).

[15] *See* footnote 7, *supra*.

14

For the week of February 23, Alexander listed Ross as "off." (Exh. 1 to Pl. Aff.; Pl. Dep. at 126-28). It is the practice of the Dental Service Center to designate employees as "off" if the availability of those employees is not certain.[16] (Def.'s Response to Interrogatory 19). The weekly schedule is prepared the week prior to the week shown on the schedule. (Def.'s Response to Interrogatory 20).

On Monday, February 23, Ross again did not show up for work, nor did she call Alexander or her supervising dentist to report the absence. (Pl. Dep. at 133-34; Chafin Aff. ¶ 25). Ross did not believe that a call to either of those individuals was necessary as Alexander had told her that in order to get more time off, Ross needed to speak with Johnson or Manzella. (Pl. Aff. ¶ 11). However, Plaintiff had her son call Dr. Chafin, the Director of Dental, to report that she was unable to work and that she was in the hospital for another flare-up of fibromyalgia which left her unable to walk.[17] (Pl. Dep. at 132-34; Chafin Aff. ¶ 25). At the conclusion of her treatment in

---

[16] Alexander herself has not submitted an affidavit to explain why she left Ross off the schedule for that week despite the previously-discussed February 19 return to work date. Defendant JCDH has filed a Supplemental Motion to Strike (Doc. #31) that portion of Ross's affidavit stating that her absence did not disrupt the department. Of this fact, Ross has made no effort to explain how she gained her personal knowledge. Therefore, the Supplemental Motion to Strike (Doc. #31) is **GRANTED**. However, the court notes that even had the supplemental motion been due to be denied, the outcome of this case would remain unchanged.

[17] Exhibit 2 to Ross's affidavit is the affidavit of Cornelius Ross, Plaintiff's son. (*See* Exh. 2 to Pl. Aff.). Cornelius's affidavit is another subject of defendant's Motion (Doc. #24) to Strike. JCDH alleges that Cornelius was never disclosed to JCDH as an individual possessing relevant or discoverable information as required by Federal Rule of Civil Procedure 26. "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party

15

the emergency room on Monday, February 23, Ross was instructed to make an appointment with her primary care physician; the appointment was made for the following day.  (Pl. Aff. ¶ 9).

Ross called Alexander in the afternoon of February 23 and left a message that she would not be at work the following day because of the follow-up appointment with her primary care physician.[18]  (Pl. Aff. ¶ 9; Pl. Dep. at 134-36).  Ross indeed did not show up for work on February 24.  (Chafin Aff. ¶ 27;[19] Manzella Aff. ¶ 18;[20] Johnson Aff. ¶ 35-36[21]).  She left a voice mail message informing "either Teresa

---

is not allowed to use that information or witness to supply evidence on a motion . . ."  FED. R. CIV. P. 26.  JCDH is absolutely correct on its statement of the law.  However, that portion of the Motion (Doc. #24) seeking to strike the affidavit of Cornelius Ross is **DENIED**.  The court is providing Plaintiff with the benefit of the doubt that Plaintiff had personal knowledge that Cornelius made the phone call as alleged in the affidavit.  (Pl. Dep. at 133-34).

[18] Because this fact is in dispute, (*see* Chafin Aff. ¶ 25), it is stated in the manner most favorable to Plaintiff.

[19] Although paragraph 27 of Chafin's affidavit is one of the subjects of Plaintiff's Motion (Doc. #22) to Strike, it is cited here for the contention that Ross did not show up for work on February 24.  Of this fact Chafin had personal knowledge.  As to this point, the Motion (Doc. #22) to Strike is **DENIED**.  Where portions of Plaintiff's Motion (Doc. #22) to Strike are not specifically mentioned herein, they are **MOOT** because the contested portions of the record were not considered by the court in making its decision herein.

[20] This point of paragraph 18 of Manzella's affidavit is not a subject of Plaintiff's Motion to Strike.  (*See* Doc. #22 at 3, ¶ 6).

[21] Although paragraph 36 of Johnson's affidavit is one of the subjects of Plaintiff's Motion (Doc. #22) to Strike, it is cited here for the contention that Ross did not show up for work on February 24.  Of this fact Johnson had personal knowledge.  As to this point, the Motion (Doc. #22) to Strike is **DENIED**.  *See also* footnote 19, *supra*, mooting certain portions of Plaintiff's Motion (Doc. #22) to Strike.

Alexander or Dr. Chafin"[22] that she was scheduled for an MRI on Wednesday, February 25, 2009 and would not be at work on that date.[23]  (Pl. Dep. at 136; Doc. #21, ¶ 15).  She called in on Wednesday, February 25 to let either Chafin or Alexander know that she would be out having an MRI that day.[24]  (Pl. Dep. at 175-76).

Manzella waited until late afternoon on Tuesday, February 24 to see if Ross would call him as instructed by Johnson regarding extended leave.  (Manzella Aff. ¶ 20).  When she did not call, Manzella sent a termination letter to Ross[25] which stated that her employment would be terminated as of the end of that business day because Plaintiff occupied a critical position and additional leave could no longer be approved.  (Manzella Aff. ¶ 20; Exh. 3 to Pl. Aff.).  The dismissal was "in good

---

[22] Specifically, Ross's deposition states: "That might have been when I left the messages with Teresa.  And I might have called Dr. Chafin and left a message on there that Tuesday to let them know I had to have an MRI.  I called somebody, I just don't remember . . . So I know I called somebody to let them know."  (Pl. Dep. at 136).

[23] Because this fact is in dispute, (*see* Chafin Aff. ¶ 27; Manzella Aff. ¶ 18; Johnson Aff. ¶¶ 35-36), it is stated in the manner most favorable to Plaintiff.  *See also* footnotes 19 and 20, *supra*.

[24] Plaintiff's testimony on this specific point was: "So I had to have left a message to let them know I was having an MRI done that Wednesday.  I had to have called somebody."  (Pl. Dep. at 176).

[25] Manzella had previously consulted with the County Health Officer, Dr. Michael Fleenor, and explained that Ross had been unable to return to work as scheduled and was out of all available leave.  (Manzella Aff. ¶ 19).  Manzella recommended to Dr. Fleenor that Ross be "out process[ed]" for failure to return from leave.  (Manzella Aff. ¶ 19).

17

standing" and was not considered by the JCDH as a disciplinary action. (Manzella Aff. ¶ 20). Ross received the termination letter on February 25, 2009. (Pl. Dep. at 137).

No JCDH dental assistant other than Ross has received FML leave beyond their allotment of 480 hours in any applicable 12 month period. (Johnson Aff. ¶¶ 44-46). Jennifer Glover has never used more than her allotment of FML in any applicable 12 month period at JCDH.[26] (Johnson Aff. ¶¶ 45-46).

## IV.    Applicable Substantive Law and Analysis

Plaintiff's complaint alleges that the JCDH discriminated against her by failing to make reasonable accommodation of her disability of fibromyalgia under the Americans with Disabilities Act ("ADA") and that the JCDH engaged in race

---

[26] Plaintiff Ross makes the following allegation in her affidavit:

> I have personal knowledge that in the calendar year of 2006, Jennifer Glover, a similarly situated, Caucasian Dental Assistant, exhausted more than twelve weeks of Family Medical Leave time due to the illness and death of her father, the birth of her child, and a serious medical condition which she said was ovarian cancer. I am also aware that no discipline was given Glover for utilizing more than twelve weeks of FML.

(Pl. Aff. ¶ 32). However, neither the affidavit nor the brief in opposition to the motion for summary judgment offer any explanation as to how Ross has gained personal knowledge of the affairs of Glover. *See* FED. R. CIV. P. 56(c) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge . . . "). Therefore, that paragraph of Ross's affidavit, which is a subject of the JCDH's Motion (Doc. #24) to Strike, is **STRICKEN**. JCDH's Motion (Doc. #24) to Strike, as it relates to paragraph 32 of Plaintiff's affidavit, is **GRANTED**.

discrimination under Title VII of the Civil Rights Act when it purportedly treated similarly situated Caucasian employees more favorably with regard to granting leave time.  (*See generally* Compl., Counts I and II).  Defendant's motion (Doc. #16) for summary judgment, as amplified in its brief (Doc. #16-1) in support thereof, asserts that: (1) the JCDH is not liable under the ADA and the facts of the case because (a) the JCDH is an arm of the State of Alabama and therefore is immune from an award of money damages under the employment provisions of the ADA by virtue of *Bd. of Trustees v. Garrett*, 531 U.S. 356, 364 (2001) and (b) under the facts of the case, Ross never requested a reasonable accommodation and therefore never triggered the JCDH's responsibility to engage in the reasonable accommodation process and set forth in *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); and (2) the JCDH is not liable for race discrimination because (a) the Plaintiff has repudiated the claim by stating that race played no role in the termination of her employment from the JCDH, (b) there was no similarly situated person to whom Plaintiff can point to as having been treated better in terms of extending leave, and (c) there were legitimate, non-discriminatory business reasons for terminating Ross's employment with the JCDH.  (*See generally* Doc. #16).  The claims and defenses are considered herein.

### A.    Count I – Discrimination under the Americans with Disabilities

### Act for Failure to Reasonably Accommodate

### 1.     Basics of the Americans with Disabilities Act

The Americans with Disabilities Act ("ADA") provides that employers shall not discriminate against qualified individuals with a disability because of that disability.  42 U.S.C. § 12112(a).

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

In order to establish a prima facie case of discrimination under the ADA, the plaintiff must show that: (1) she is disabled; (2) she was a qualified individual at the relevant time; and (3) she was discriminated against because of his disability.  *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001).  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).

An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability – unless doing so would impose undue hardship on the employer.  42

U.S.C. § 12112(b)(5)(A); *see also Lucas*, 257 F.3d at 1255. "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows her to perform the job's essential functions." *Id.* at 1255-56; *see also Earl v. Mervyn's, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) and *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). An employee's failure to request a reasonable accommodation is fatal to the prima facie case; "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made." *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *see also Warren v. Volusia County, Florida*, 188 Fed. Appx. 859 at *863, No. 05-16411 (11th Cir. July 5, 2006).

### 2.   Eleventh Amendment Immunity

The Supreme Court has held that, by virtue of the Eleventh Amendment,[27]

---

[27] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although by its terms the Eleventh Amendment applies only to suits against a State by citizens of another State, Supreme Court cases have extended the Amendment's applicability to suits by citizens against their own States. *See Garrett*, 531 U.S. at 363, *citing Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 72-73 (2000) and *College Savings Bank v. Florida Prepaid Postsecondary Ed. Expense Bd.*, 527 U.S. 666, 669-70 (1999).

employees of the State may not recover money damages for the State's failure to comply with the provisions of Title I of the ADA.  *See Bd. of Trustees of the Univ. of Alabama v. Garrett*, 531 U.S. 356, 360 (2001).  This protection applies not only to a State but also to governmental agencies and entities that function as arms of the State.  *See Abusaid v. Hillsborough County Bd. of Comm'rs*, 405 F.3d 1298, 1303 (11th Cir. 2005) (*citing Hans v. Louisiana*, 134 U.S. 1 (1890)).  Plaintiff concedes that if the JCDH is an arm of the state, it is immune from suit under the ADA.  (*See* Doc. #21 at 10-11) ("Although the terms of the Eleventh Amendment does not bar suits against a state in federal court by its own citizens, the Supreme Court has extended its protections to apply in such cases.").  Therefore, the relevant inquiry for this court is only whether the JCDH is an arm of the state – if it is, it is entitled to immunity from Plaintiff's ADA claim.

Various courts in the state of Alabama have determined that county health departments are arms of the state, thus making them immune to suit under the ADA.[28] In making that determination, courts look to state law.  *See, e.g., Brown v. East Central Health Dist.*, 752 F.2d 615, 617 (11th Cir. 1985); *Davenport v. Neely*, 7

---

[28] Plaintiff has chosen not to address the JCDH's argument that it is an arm of the state by function of controlling and persuasive case law, relying instead on the application of the four prong test as set forth in *Abusaid v. Hillsborough County Bd. of Comm'rs*, 405 F.3d 1298 (11th Cir. 2005).  (Doc. #21 at 10-16).

F.Supp.2d 1217 (M.D. Ala. 1998); *Smith v. Smith*, 778 So.2d 189, 191 (Ala. Civ. App. 1999) (holding that the Jefferson County Board of Health is a state agency entitled to sovereign immunity under the Alabama Constitution); *Bathgate v. Mobile County Bd. of School Comm'rs*, 689 So.2d 109 (Ala. Civ. App. 1996), *cert. denied*. By state statute, a county board of health and department of health in Alabama function as state entities and are enjoined by statute to enforce the rules of the State Board of Health and function under its discretion. *See* ALA. CODE § 22-3-2 (1975). The county board of health is to elect a county health officer subject to approval by the state, and once elected that officer has sole discretion of all sanitary and public health work within the county. *See* ALA. CODE §§ 22-3-2(5), 22-3-4. The county health officer employs other employees subject to the merit system. *See* ALA. CODE § 22-3-4. The only provision concerning removal of a health officer allows for appeal only to the State Committee of Public Health. *See* ALA. CODE §§ 22-3-2(5), 22-1-1. By operation of these provisions, it is clear that the JCDH carries out state functions under the supervision of the state.[29]  For this reason alone, the JCDH is entitled to summary judgment on Ross's ADA claim.

---

[29] This court declines to consider the factors set forth in *Abusaid*, not only because it is clear under state law that the JCDH is an arm of the state for purposes of this case, but also because even were the JCDH not entitled to immunity, Ross's claim under the ADA would nevertheless fail to survive summary judgment. *See* discussion *infra* Section IV.A.3.

### 3.     Ross's Failure to Request Reasonable Accommodation

Even were the JCDH not entitled to Eleventh Amendment immunity, Ross's ADA claim as asserted against the JCDH would nevertheless fail.  An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability – unless doing so would impose undue hardship on the employer.    42 U.S.C. § 12112(b)(5)(A); *see also Lucas*, 257 F.3d at 1255.  "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions."  *Id.* at 1255-56; *see also Earl v. Mervyn's, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) and *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997).  An employee's failure to request a reasonable accommodation is fatal to the prima facie case; "the duty to provide a reasonable accommodation is not triggered unless a specific demand for an accommodation has been made."  *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999); *see also Warren v. Volusia County, Florida*, 188 Fed. Appx. 859 at *863, No. 05-16411 (11th Cir. July 5, 2006).

Plaintiff's complaint alleges that she "requested reasonable accommodations for her disability" and that the JCDH "failed and refused to make reasonable accommodations for plaintiff's disability by denying her light duty and by terminating

her employment on February 24, 2009 for using her FMLA leave."[30]  (Compl., ¶¶ 9,

11).  However, only one additional sentence contained in Ross's brief in opposition

to the motion for summary judgment attempts to further elucidate that point.  "Ross's

doctor, Wallace Purdy, M.D., requested a reasonable accommodation that 'she'll

[occasionally] have to take a few days [3 to 5 days a month] off work.'" (Doc. #21 at

17; *see also* Exh. D to Pl. Dep.).  What is interesting about the selected quotation by

Plaintiff is that the doctor's note was signed on March 14, 2008 at the time Ross was

requesting intermittent leave under the Family and Medical Leave Act.  (*See* Exh. D

to Pl. Dep.).  It was clearly *not* a request for reasonable accommodation of Plaintiff's

medical condition in February 2009 under the Americans with Disabilities Act.[31]  And

even if it were, the court is not convinced that such notation would be sufficient to

rise to the level of a request for a reasonable accommodation.  *See Warren*, 188 Fed.

Appx. at *863 (holding that where a physician is not acting as an employee's

representative, "his notations that light or sedentary jobs were necessary did not

---

[30] Plaintiff's contention is that the JCDH "violated the ADA when it failed to extend[] the accommodation from February 19, 2009 to February 24, 2009."  (Doc. #21 at 17).

[31] Indeed, there was no specific request for reasonable accommodation in February 2009 despite the fact that Plaintiff was informed that she could apply for extended leave if needed. (Manzella Aff. ¶ 13).  Plaintiff makes no argument in her brief that she requested accommodation in February 2009, and makes no attempt to create a request out of the recommendation by her physician for two weeks of "light duty."  (*See generally* Doc. #21; *see also* discussion *supra* on why such a request would nonetheless be insufficient).

constitute a request for an accommodation" and that it is not enough that the employer "knew of [plaintiff's] disability, her limitations, and her desire to return to work to trigger her right to an accommodation.").

For this separate and additional reason, defendant JCDH is entitled to summary judgment on Plaintiff's claim under the Americans with Disabilities Act.

### B.      Count II – Racial Discrimination in the form of Disparate Treatment under Title VII and 42 U.S.C. § 1981[32]

A plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics.[33]  *See* 42 U.S.C. § 1981(a); *see also Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence).  Here, Plaintiff has presented only circumstantial evidence of racial discrimination and retaliation.  (*See* Doc. #21 at 18).  "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.

---

[32]   The Eleventh Circuit applies the same analytical framework to Title VII and § 1981 race discrimination claims.  *See Cooper v. Southern Co.*, 390 F.3d 695, 724-25 (11th Cir. 2004).

[33]   *See also McDonnell Douglas*, 411 U.S. at 802 n.13 ("The facts necessary will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not applicable in every respect in different factual situations.").

2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." *Combs*, 106 F.3d at 1527.  Under the *McDonnell Douglas* and *Burdine* framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally.  *See id.* at 1527-28.  The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are flexible and depend to a large degree upon the facts of the particular situation.  *See, e.g., Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1185 (11th Cir. 1984); *Lincoln v. Board of Regents of Univ. Sys.,* 697 F.2d 928, 937 (11th Cir. 1983).  In general, a plaintiff establishes a prima facie case of disparate treatment employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly.  *See McDonnell Douglas*, 411 U.S. at 802 (hiring); *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (discipline); see also <u>Nix</u>, 738 F.2d at 1185 (discipline); *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981) (wages).

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to

27

articulate a legitimate, nondiscriminatory reason for its actions.[34] *See Rojas*, 285 F.3d at 1342; *Combs*, 106 F.3d at 1528.  The employer "need not persuade the court that it was *actually motivated by the proffered reasons." Burdine,* 450 U.S. at 254-55*; see Chapman*, 229 F.3d at 1024.  If the employer satisfies that burden by articulating one or more such reasons, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination.[35]  Where the defendant articulates multiple, reasonable, legitimate and nondiscriminatory reasons, plaintiff must rebut each of defendant's proffered reasons.  *See Chapman*, 229 F.3d at 1024-25.

Despite this shifting of the burden of production between the plaintiff and the defendant under the *McDonnell Douglas* and *Burdine* framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at. 253.  Given that the ultimate burden of persuasion always lies with the employee, a

---

[34] *See Chapman*, 229 F.3d at 1032 (A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which the employer based its subjective opinion.).

[35] If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot recast the reason but must meet it head on and rebut it.  Simply quarreling with that reason is not sufficient.  *Chapman*, 229 F.3d at 1030.

plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000) (pointing out that the production of the necessary sufficient evidence by plaintiff will not always prevent the employer from prevailing on a Rule 50 motion and suggesting that the strength of plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other properly considered evidence that supports the employer's case are among other factors to take into account in evaluating a Rule 50 motion); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Abel v. Dubberly*, 210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993).

### 1.    Plaintiff's Claim for Racial Discrimination Fails on her own Concession

In her deposition, Ross was asked whether she felt like her termination had

anything to do with race.  Ross's simple answer was "no."  (Pl. Dep. at 101).  As such, it would be impossible for a claim of race discrimination to stand.[36]  *See, e.g. Edwards v. Wallace Comm. College*, 49 F.3d 1517, 1522 (11th Cir. 1995) (holding that the district court did not err in holding that the summary judgment record did not substantiate a hostile work environment claim where plaintiff, in her deposition, conceded that she could not cite any examples of Caucasian employees being treated more favorably than herself) and *Higdon v. United Steelworkers of America, AFL-CIO-CLC*, 706 F.2d 1561 (Ga. Cir. 1983) (where plaintiff's lawsuit claimed that he was not given notice of a grievance proceeding, the court found the claim "somewhat incredulous since [plaintiff] himself conceded that the union informed him that a hearing would take place . . .").  For this reason alone, the JCDH's motion for summary judgment as to the race discrimination claim is due to be granted.

## 2. Plaintiff has not Established a Prima Facie Case of Race Discrimination

Even had Plaintiff not conceded her claim of race discrimination, such claim

---

[36] This is so even in light of Plaintiff's counsel objection to the form of the question during the deposition and his statement that "[t]he lawsuit will itemize the claims."  (Pl. Dep. at 101).  In fact, there is no argument made in Plaintiff's brief in opposition to the motion for summary judgment that such statement does not withdraw the claim.  (*See generally* Doc. #21 at 17-19).

would nevertheless fail at the prima facie stage.[37]  To establish a prima facie case of

disparate treatment, Ross must show that: (1) she is a member of a protected class; (2)

she was subjected to an adverse employment decision; (3) her employer treated

similarly situated white employees more favorably; and (4) she was qualified to do

her job. *See Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1276 (11th Cir. 2008)

(citing *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989)); *see also Burke-*

*Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).  The JCDH

appears to concede that Ross is a member of a protected class, and that she was

subjected to an adverse employment decision and was qualified to do her job.

(*See* Doc. #16-1 at 29).  Defendants do directly dispute the third element: whether

Ross has established, by a preponderance of the evidence, that the JCDH treated

similarly situated white employees more favorably than Ross herself.

These types of cases do not turn on whether a defendant treated a plaintiff

fairly.  If that were the key issue, this court would sit as a super-personnel director.

It is well-established that the federal courts should not serve as "super-personnel

department[s] that reexamine[ ] an entity's business decisions." *Chapman*, 229 F.3d

at 1030 (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th

---

[37] Because it is abundantly clear that Plaintiff conceded her race discrimination claim *and* that such claim would nevertheless fail on the prima facie analysis, the court finds that it would be a waste of judicial resources to further consider the claim in detail on the pretext analysis.

Cir.1991)).  In *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1310 (11th
Cir. 1998), *modified in non-relevant part and reh'g denied*, 151 F.3d 1321 (1998),
the Eleventh Circuit emphasized the necessity of showing that similarly situated
employees outside the Plaintiff's protected class were treated more favorably: "It is
this showing — and not the demonstration of racial animus alone — that addresses
the fundamental issue in a Title VII disparate treatment case: whether the defendant
intentionally discriminated against the plaintiff." *Jones*, 137 F.3d at 1313 (citations
omitted); *see also Silvera v. Orange County School Board*, 244 F.3d 1253, 1259 (11th
Cir. 2001); *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).  Employees are
similarly situated when they are accused of the same or similar conduct.  *See Silvera
v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001). The conduct must
be nearly identical "to prevent courts from second-guessing employers' reasonable
decisions and confusing apples with oranges." *Id.* (citations omitted) (holding that
although two employees had arrests for assaulting a child, they were not similarly
situated because one had three additional arrests for violent assaults); *see also
Thomas v. Dep't of Corrections for State of Georgia*, 377 Fed.Appx. 873, at *6 (11th
Cir. 2010).[38]  That is, it is necessary for the court to consider whether the employees

---

[38] The court appreciates, as did the *Thomas* court, that *Alexander v. Fulton County, Ga.*,
207 F.3d 1303, 1334 (11th Cir. 2000) set out a less exacting burden.  But *Burke-Fowler v.
Orange County, Fla.*, 447 F.3d 1319, 1323 n. 2 (11th Cir. 2006), made clear that the "nearly

are involved in or accused of the same or similar misconduct and are disciplined in different ways. *See Holifield*, 115 F.3d at 1562. The most important factors in the disciplinary context are "the nature of the offenses committed and the nature of the punishments imposed." *See Maniccia*, 171 F.3d at 1368. "The Eleventh Circuit requires 'that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Vickers v. Federal Express Corp.*, 132 F.Supp.2d 1371, 1380 (S.D. Fla. 2000) (quoting *Maniccia*, 171 F.3d at 1368-69); *see also Wilson*, 376 F.3d at 1091 (requiring the comparator's situation to be "nearly identical."). If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present. *See id.* (citing *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)); *Jones*, 137 F.3d at 1311 ("If Plaintiff fails to identify similarly situated, nonminority employees who were treated more favorably, her case must fail because the burden is on her to establish her prima facie case.").

Plaintiff identifies only one individual whom she contends was treated more favorably than herself with regard to leave – "[i]n this case before the Court, Ross has

---

identical" standard of *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999) – a panel decision that pre-dates the *Alexander* panel decision – applies under the prior precedent rule.

identified a similarly situated Caucasian Dental Assistant, Jennifer Glover, who

exceeded her 12 weeks of FMLA leave, and was not terminated as she was." (Doc.

#21 at 19).  In fact, this is the sum total of Plaintiff's argument that she and Glover

are similarly situated.  (*See generally* Doc. #21 at 17-19).  She offers no explanation

of the leave offered Glover, stating only in her deposition that "I do feel strongly that

she [Glover] has used it [FML time] up."  (Pl. Dep. at 179; *see also* footnote 26,

*supra*).[39]   But the undisputed evidence clearly establishes that Glover had not

exhausted her leave at the time she was granted an extension, and therefore was never

absent without leave.  (Johnson Aff. ¶¶ 45-46).  On these facts alone, the JCDH is

---

[39] The precise testimony was this:

> Q:    Okay.  How are you sure she exhausted all her time?
> A:    I'm not sure, but she had been off more than six weeks as far as giving birth to her baby.  And then she come right back to work and had to take a leave of absence again because of she had to have surgery.
>
> Q:    All right.  And you understand the FMLA allotment is twelve weeks?
> A:    Yes, sir.
>
> Q:    You feel like she has used up her twelve weeks?
> A:    I do strongly feel like she had used it up.
>
> Q:    Anything else?
> A:    Just a second, please.  That's it.  That's all I can.
>
> Q:    That's all you can think of now?
> A:    Yes, right now.

(Pl. Dep. at 179-180).

entitled to summary judgment on Ross's claim for disparate treatment on the basis of race.

## V.     Conclusion

In summary, the court finds that no material issue of fact remains and that defendant Jefferson County Department of Health is entitled to judgment as a matter of law as to all claims asserted by plaintiff.  A separate order will be entered.

**DONE** this the ___10th___ day of August, 2011.

_____

SENIOR UNITED STATES DISTRICT JUDGE